UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
MONTAUK JUICE FACTORY INC.,                                 :
THE END BROOKLYN,                                           :
                                                            :
                            Plaintiffs,                     :    Civ.    1:17-cv-02678
                                                            :
            v.                                              :    **COMPLAINT**
                                                            :
STARBUCKS CORPORATION d/b/a                                 :    **JURY TRIAL DEMANDED**
STARBUCKS COFFEE COMPANY                                    :
                                                            :
                            Defendant.                      :
------------------------------------------------------------x

Plaintiff Montauk Juice Factory Inc. ("Montauk Juice"), owners of co-plaintiff The End Brooklyn ("The End," collectively "Plaintiffs"), by and through their attorneys, bring this action against Starbucks Corporation d/b/a Starbucks Coffee Company ("Starbucks" or "Defendant"), and allege, upon personal knowledge of their own acts and status and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.      This is an action seeking to hold Defendant accountable for infringing, diluting, and otherwise diminishing the value of Plaintiffs' intellectual property. Starbucks' decision to launch, promote, and sell a product called a "Unicorn Frappuccino" (a "flavor-changing, color-changing, totally not-made-up" product, according to Defendant's website) infringed on Plaintiffs' distinctive and famous trademark in the name UNICORN LATTE, a name that Plaintiffs have used since last year to refer to their own popular colorful beverage. The size of and scope of Starbucks' product launch was designed so that the Unicorn Frappuccino would eclipse the Unicorn Latte in the market, thereby harming Plaintiffs and confusing their

customers. In addition to having a highly similar name, Starbucks' Unicorn Frappuccino shares visual similarities to the Unicorn Latte in that both were brightly colored and featured the colors pink and blue prominently, the below diagram reflects an advertisement for the Unicorn Latte on the left and the Unicorn Frappuccino on the right:



| **Unicorn Latte** | **Unicorn Frappuccino** |

2. The End began selling the Unicorn Latte in December 2016. Despite the distinctive name, the Unicorn Latte contained no coffee or milk and was instead a freshly-made blended beverage containing fresh ingredients such as cold-pressed ginger, lemon juice, dates, cashews, blended with additional healthy, dried ingredients such as maca root, blue-green algae, and vanilla bean.

3. In December 2016, the Unicorn Latte began appearing in articles published by both traditional and online media outlets, including in the New York Times, the Huffington Post, and TimeOut Magazine. The press, coupled with advertising efforts and broad social media

exposure on Facebook and Instagram (via the hashtag #unicornlatte), made the Unicorn Latte name and product famous.

4. To capitalize on and protect their rights in a successful and popular product, Plaintiffs applied to register the name "UNICORN LATTE" with the United States Patent and Trademark Office ("USPTO"). Specifically, Plaintiffs filed a TEAS Plus Application with the USPTO on January 20, 2017; a copy is attached hereto as Exhibit A. The pending application was and is publicly accessible on the USPTO's website.

5. On April 17, 2017, Starbucks began selling and aggressively marketing a new blended beverage product called the "Unicorn Frappuccino". Like Plaintiffs' product, the Unicorn Frappuccino contains no coffee, despite the name. However, while the Unicorn Latte is a blend of fresh juices and healthy ingredients, the Unicorn Frappuccino is a concoction of milk, artificial sweeteners, color additives, and pinches of fruit juice concentrate for flavor. At no point prior to developing, marketing, and launching its product did Starbucks approach Plaintiffs for permission to use a name deceptively similar to Unicorn Latte.

6. Starbucks has more than 13,000 stores in the United States and approximately 2,000 stores in Canada and Mexico. Starbucks' massive and public launch of the Unicorn Frappuccino across North America meant that its product became the dominant "Unicorn" beverage overnight. The press immediately publicized the product and Starbucks' sophisticated social media apparatus ensured that Unicorn Frappuccinos became a viral sensation on Facebook, Twitter, and Instagram.

7. This, in turn, immediately caused consumer confusion whereby customers began referring to Starbucks' product as a "Unicorn Latte," began assuming that Plaintiffs' product was a copy-cat or knockoff, and began asking employees at The End to serve them a "Unicorn

3

Frappuccino." Starbucks' products began appearing on social media labeled with the hashtag #unicornlatte, online publications began referring to Starbucks' products as Unicorn Lattes, and Plaintiffs' Unicorn Latte—while still occasionally mentioned—was reduced to an "also ran" anecdote to Starbucks' Unicorn Frappuccino.

8. While Starbucks' product has been temporarily taken off the market—it was always intended as a limited-run item—the damage to Plaintiffs' trademark and business continues and, to an extent, may well be irreparable. Starbucks' conduct has diluted the distinctive quality of Plaintiffs' famous UNICORN LATTE mark and has and is likely to continue to confuse consumers into believing that Starbucks' products are affiliated with, or are otherwise endorsed or approved by Plaintiffs, and vice-versa.

9. In order to protect their valuable intellectual property, Plaintiffs bring this action in law and equity for (i) trademark infringement, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 et seq.; (ii) trademark dilution under 15 U.S.C. § 1125(c); (iii) unfair competition under the common law; (iv) trademark infringement and unfair compensation under New York General Business Law § 360-k; and (v) trademark dilution and injury to business reputation under New York General Business Law § 360-l.

## PARTIES

10. Plaintiff, Montauk Juice Factory Inc., is a New York-based company that produces and markets fresh-squeezed juices, other blended beverages, and various coffee products. Montauk Juice owns and operates co-plaintiff The End Brooklyn, a coffee and beverage shop located in Williamsburg, Brooklyn, New York that markets and sells coffee and other blended beverages, including the Unicorn Latte. Montauk Juice Factory Inc. is headquartered at 12 South Etna Avenue, Montauk, New York, 11954 and operates The End

Brooklyn, which has a business address of 522 Metropolitan Avenue, Brooklyn, New York, 11211.

11. Defendant Starbucks is a multi-national beverage corporation with its principal office at 2401 Utah Avenue South, Seattle, Washington 98134. Starbucks operates 13,107 stores in the United States, 897 of which are in New York State and 361 are in New York City. Starbucks also operates approximately 2,000 stores in Canada and Mexico, through its corporate subsidiaries.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338 with respect to the claims arising under federal law and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1338(b) with respect to the claims arising under the laws of New York State.

13. This Court has personal jurisdiction over Starbucks because, *inter alia*, Starbucks regularly conducts business in New York through the 897 stores it operates and has offered and sold its infringing Unicorn Frappuccino products in New York. Starbucks' actions have caused injury to Plaintiff and to consumers in New York.

14. Venue in this county is proper under 28 U.S.C. § 1391 because defendants conduct or have conducted business in this judicial district and Plaintiffs have suffered injury in this district, and because this Court has personal jurisdiction over Defendants in this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### *The End creates and markets the Unicorn Latte*

15.     On July 20, 2016, Montauk Juice opened The End in Williamsburg in order to have a prominent retail space to sell new creative coffee and blended beverages that they invent. The store sells healthy, colorful beverages such as the Radiance Beauty and the Bonfire Cider.

16.     Madeline Murphy, a co-owner of Montauk Juice and the manager of The End, creates healthy blended beverages that taste great.  Her greatest invention thus far is the UNICORN LATTE, a healthy, unique, colorful, blended beverage, which she began developing in the springtime of 2016.

17.     The Unicorn Latte does not contain cow's milk, processed sugar, or food dye. Instead, the Unicorn Latte contains a number of superfoods, which are embraced by the wellness community for their "magical" healing properties.  The "Unicorn" in Unicorn Latte is meant to evoke in the consumer's mind the magical characteristics associated with the mythical creature. The colorful look of the Unicorn Latte is, in part, meant to play on the pop-culture association of unicorns with bright or pastel colors and, in part, because the Unicorn Latte fits with the current trend of colorful foods—a relatively recent interest, particularly on the Internet, with multi-colored foods that includes Unicorn Noodles, Rainbow Bagels, Mermaid Toast, and even Unicorn Poop.

18.     Ms. Murphy's partners at Montauk Juice recognized how special her creation was and developed a marketing strategy for a launch of the Unicorn Latte.  After six months of development and consumer testing, The End launched the Unicorn Latte on their menu, officially offering it for sale around December 2016.

19. On December 19, 2016, the New York Times Style Magazine published an article about the Unicorn Latte, including a photograph of the product and a list of its ingredients. More press followed, with the Huffington Post, TimeOut Magazine, Metro UK, Lonely Planet, and many more online publications writing articles. New York Live TV and NBC New York promoted, and continue to promote, the Unicorn Latte on the televisions in back of New York City taxi cabs.

20. Owing to a combination of deliberate marketing by Plaintiffs and word-of-mouth or viral marketing, the Unicorn Latte quickly became popular on social media such as Facebook and Instagram. Indeed, the hashtag #unicornlatte contains many pictures of the Unicorn Latte posted by various individuals. As one publication, AM New York, noted: "The End's Unicorn Latte is made for Instagram."

21. Since its launch, the Unicorn Latte has generated significant revenue for The End, accounting for approximately 25% of the store's revenue since January 2017.

22. In response to the demand for the Unicorn Latte, the recently-generated press, and the fame that the Unicorn Latte had attained, Montauk Juice Factory Inc. submitted a TEAS Plus Application for the UNICORN LATTE Trademark on January 20, 2017, which is attached as Exhibit A.

*Starbucks' massive Unicorn Frappuccino launch eclipses the Unicorn Latte*

23. In mid-April 2017, while The End's Unicorn Latte was enjoying success and widespread coverage, rumors began to circulate that Starbucks was planning a launch of its own multi-colored beverage in the form of a "Unicorn Frappuccino."

24. On April 18, 2017, Starbucks announced that its Unicorn Frappuccino would be available for a limited time in a press release titled "Starbucks Weaves its Magic with New Color

7

and Flavor Changing Unicorn Frappuccino." Aside from the similar name, the new drink, like the Unicorn Latte, was brightly colored—featuring pink and blue prominently—and included the addition of powdered topping which was reminiscent of the Unicorn Latte's decoration. As a result, Starbucks' Unicorn Frappuccino presented itself as a deceptively similar beverage to the Unicorn Latte in both name and appearance:



| **Unicorn Latte** | **Unicorn Frappuccino** |

25. Starbucks' Unicorn Frappuccino press release also made no secret about Starbucks' intention to establish its deceptively similar beverage as the main (if not the only) "unicorn" beverage on social media. In fact, Starbucks explicitly bragged: "Once only found in enchanted forests, unicorns have been popping up in social media with shimmering unicorn-themed food and drinks. Now Starbucks is taking the trend to a new level with the first Unicorn Frappuccino® blended beverage . . . ." In effect, Starbucks announced that its Unicorn

8

Frappuccino was created with the intent of achieving broad exposure on social media; yet another point of similarity with the Unicorn Latte, a beverage that was "made for Instagram."

26. Critically, while Starbucks does not directly mention the Unicorn Latte in its release, the reference to "unicorn-themed food and drinks" and Plaintiffs' outstanding USPTO application for the Unicorn Latte demonstrate that Starbucks was well aware that it was launching a product that was deceptively and confusingly similar to The End's in name, appearance, and intended publicity channels.

27. Nobody from Starbucks reached out to the owners or management of Montauk Juice, The End, or any of their representatives to inquire about the use of the mark. Moreover, Starbucks disregarded the Trademark Application on file with the USPTO, despite the application being publicly available via the USPTO website, including as a result of searches for marks that include the word "unicorn."

28. On April 19, 2017, Starbucks executed its carefully planned strategy to begin selling and aggressively marketing the Unicorn Frappuccino in participating stores throughout the United States, including in New York City, as well as Canada and Mexico.

*Starbucks' Unicorn Frappuccino causes widespread consumer confusion*

29. Almost immediately, consumers became confused over the origination and affiliation of the Unicorn Frappuccino. On Instagram, the hashtag #unicornlatte began to be populated with pictures of Starbucks' Unicorn Frappuccino. Comments on Instagram show evidence of consumer confusion as to the origination of the blended beverage, with many people believing that Starbucks invented the beverage.

30. The coordinated social media blitz orchestrated by Starbucks drowned out the fame that any coffee shop in Brooklyn could obtain. Press outlets immediately picked up the

9

story and reinforced the consumer confusion over the origination of the Unicorn blended beverage that had already begun. Some media outlets recognized The End as the creator of the Unicorn blended beverage, but many did not and instead focused on how aesthetically attractive the Starbucks drink was for social media.

  31. Individuals previously aware of the Unicorn Latte became confused about whether Starbucks' Unicorn Frappuccino was the same healthy concoction developed by the Plaintiffs and if it had been licensed to Starbucks.

  32. Confused by the ubiquity of Defendant's products, especially on social media, individuals who were not previously aware of the Unicorn Latte now believe that Starbucks' Unicorn Frappuccino came first and that The End's Unicorn Latte was inspired by Starbucks' Unicorn Frappuccino.  Ms. Murphy now regularly gets asked at The End whether the Unicorn Latte was inspired by Starbucks.

  33. Media outlets and individuals on social media referred to the Starbucks' Frappuccino as a Unicorn Latte:

    a. "Starbucks Puts Unicorn Latte On Menu" is the title of a YouTube video by Chasing News, who is a contributor to My9 in New Jersey, Fox29 Philly, and Fox

5 WNYW:



b. Individuals posting to Instagram and other social media outlets refer to Starbucks' Unicorn Frappuccino as a Unicorn Latte and use the hashtag, #unicornlatte:



11

34. This widespread confusion was made worse by the derision and ridicule that Starbucks' Unicorn Frappuccino encountered upon launch. For example, People Magazine broadly proclaimed that Katy Perry, a world-renowned recording artist and marketing icon, "Spits Out Starbucks' Unicorn Frappuccino After One Sip." Likewise, social media posts began appearing that chastised Starbucks for their "Unicorn Latte," including: "Forget the gross #UnicornLatte from @Starbucks! Try making these for a #healthy treat . . . ." Thus, consumers who would have been interested in the Unicorn Latte because of the health benefits of the beverage now associate it with the unhealthy ingredients of Starbucks' "Unicorn Frappuccino" and are deterred from trying it. Customers who would have been drawn to the Unicorn Latte's popularity on social media including through the #unicornlatte hashtag now associate it with a much larger social media conversation—much of which is critical of the Unicorn Frappuccino and those that post about it.

35. As a result, the Unicorn Latte sold by The End has suffered, and continues to suffer, brand dilution and tarnishment. The consumer confusion ruins the goodwill associated with the UNICORN LATTE brand that Plaintiffs worked so hard to achieve.

*Plaintiffs seek to protect their valuable intellectual property*

36. On April 24, 2017, counsel for Plaintiffs sent Defendant a cease-and-desist letter, notifying Defendant of the enormous damage caused by its infringement on Plaintiffs' mark. Defendant responded by, first, claiming that Plaintiffs did not have a protectable mark, second, threatening to oppose Plaintiffs' application with the USPTO, and third, offering token concessions such as not marketing a product using the exact name "Unicorn Latte" or offering a juice product with the word "unicorn" in its name.

37. Starbucks' purported concessions were plainly inadequate. To begin with, Starbucks has already earned millions of dollars from its infringement and caused irreparable harm to Plaintiffs' valuable UNICORN LATTE mark; Plaintiffs' immediate concern was not that Starbucks would launch a Unicorn Latte but the use of Unicorn Frappuccino as a product name. Second, Starbucks' press release suggested that their Unicorn Frappuccino product could return to the market at some later date, given that it was only the "first Starbucks Frappuccino® blended beverage . . . ." Finally, despite their offer, online news and social media posts have already begun circulating rumors and actual photos of a "Unicorn Lemonade" product, with at least one article stating: "Now, Starbucks Baristas are making 'Unicorn Lemonade.'"

38. To be sure, Plaintiffs have been policing its mark since launching the Unicorn Latte in 2016. In fact, Starbucks was not the first to infringe on the UNICORN LATTE mark. A beverage shop in Times Square began selling a "Unicorn Latte" in March 2017. Promptly, Jason Foscolo on behalf of Montauk Juice sent a cease and desist letter demanding that they stop selling the Unicorn Latte or change the name of the beverage. The beverage shop immediately responded by changing the name of their colorfully blended beverage.

39. Unless the relief requested is granted, Starbucks' ill-gotten gains will have been achieved through unlawful means that have already caused and will continue to cause irreparable harm to Plaintiffs' intellectual property and harm the goodwill that had been accomplished through ingenuity and hard work.

**FIRST CAUSE OF ACTION**
Federal Trademark Infringement, Federal Unfair Competition, and False Designation of Origin Under The Lanham Act, 15 U.S.C. §§ 1051 et seq.

40. Plaintiffs repeat and incorporate by reference the allegations contained in the foregoing paragraphs of this Complaint.

41. Plaintiffs possess valid and enforceable rights in the UNICORN LATTE mark in connection with all of the goods and services at issue in this case by virtue of their extensive use, registration, promotion, and advertisement of the UNICORN LATTE mark, and have possessed such rights at all times material hereto.

42. By virtue of its extensive use, registration, advertising, promotion, and consumer and marketplace recognition, the UNICORN LATTE mark is famous and distinctive, and is entitled to protection against likely dilution by blurring and by tarnishment.

43. Starbucks commenced the activities complained of herein after the UNICORN LATTE mark had become famous.

44. Starbucks' conduct is willful, deliberate, in bad faith, and undertaken with knowledge of Plaintiffs' prior rights, and with full knowledge that Starbucks has no right, license, or authority to use Plaintiffs' trademark or any confusingly similar variant thereof, including Unicorn Frappuccino.

45. Defendant's unauthorized use of the Plaintiffs' marks is likely to cause confusion, or to cause mistake, or to deceive as to the sponsorship, affiliation, connection, or association of Defendant or Defendant's commercial activities with Plaintiffs or Plaintiffs' commercial activities, or as to the origin, sponsorship, or approval of Defendant's services or commercial activities by the Plaintiffs.

46. Defendant's aforementioned acts constitute willful violation of Plaintiffs' marks in violation of the Lanham Act, Sections 32 and 43, 15 U.S.C. §§ 1114, 1125.

47. By such wrongful acts, Defendant has caused, and unless restrained by the Court under 15 U.S.C. § 1116 will continue to cause, serious irreparable injury and damage to

Plaintiffs and to the goodwill associated with Plaintiffs' marks. This harm constitutes an injury for which Plaintiffs have no adequate remedy at law.

## SECOND CAUSE OF ACTION
Trademark Dilution under the Lanham Act 15 U.S.C. § 1125(c)

48. Plaintiffs repeat and incorporate by reference the allegations contained in the foregoing paragraphs.

49. Defendant's aforementioned acts constitute trademark dilution in violation of the Lanham Act, Section 43(c), 15 U.S.C. § l 125(c).

50. By such wrongful acts, Defendant has caused, and unless restrained by the Court will continue to cause, serious irreparable injury and damage to plaintiff and to the goodwill associated with the Plaintiffs' marks. Plaintiffs are without an adequate remedy at law.

## THIRD CAUSE OF ACTION
Common Law Trademark Infringement

51. Plaintiffs repeat and incorporate by reference the allegations contained in the foregoing paragraphs.

52. Defendant's aforementioned acts constitute unfair competition under the common law.

53. By such wrongful acts, Defendant has caused, and unless restrained by the Court will continue to cause, serious irreparable injury and damage to Plaintiffs and to the goodwill associated with the Plaintiffs' marks. Plaintiffs are without an adequate remedy at law.

## FOURTH CAUSE OF ACTION
New York Trademark Infringement and
Unfair Competition N.Y. Gen. Bus. Law § 360-k

54. Plaintiffs repeat and incorporate by reference the allegations contained in the foregoing paragraphs.

55. Defendant's aforementioned acts constitute willful violation of Plaintiffs' marks in violation of the N.Y. Gen. Bus. Law§ 360-k.

56. By such wrongful acts, Defendant has caused, and unless restrained by the Court will continue to cause, serious irreparable injury and damage to plaintiff and to the goodwill associated with the Plaintiffs' marks. Plaintiffs are without an adequate remedy at law.

**FIFTH CAUSE OF ACTION**
New York Trademark Dilution and
Injury to Business Reputation N.Y. Gen. Bus. Law§ 360-l

57. Plaintiffs repeat and incorporate by reference the allegations contained in the foregoing paragraphs.

58. Defendant's aforementioned acts constitute willful violation of Plaintiffs' marks in violation of the N.Y. Gen. Bus. Law§ 360-l.

59. By such wrongful acts, Defendant has caused, and unless restrained by the Court will continue to cause, serious irreparable injury and damage to Plaintiffs and to the goodwill associated with the Plaintiffs' marks. Plaintiffs are without an adequate remedy at law.

**PRAYER FOR RELIEF**

60. Plaintiffs are a direct competitor of Starbucks. Starbucks' actions described above are likely to mislead consumers about the nature, quality, characteristics, and/or source of its products and divert customers from The End to Starbucks. Starbucks' conduct has caused and is causing irreparable injury to Plaintiffs and, unless enjoined by the Court, will continue both to damage Plaintiffs and to deceive the public. This harm constitutes an injury for which Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs demand judgment as follows:

1. Enter judgment in favor of Plaintiffs on all counts;

    2. Enter a permanent injunction restraining Starbucks and its officers, directors, employees, agents, affiliates, successors, assigns, franchisees, licensees, and all those in privity or acting in concert with them:

        a. From in any way diluting, using, displaying, advertising, copying, imitating, or infringing upon the UNICORN LATTE mark, including by using the UNICORN FRAPPUCCINO mark;

        b. From using or displaying the UNICORN LATTE mark or confusingly similar variations thereof, including without limitation the UNICORN FRAPPUCCINO mark, on or in connection with any products or in any written, oral, or audiovisual advertisements, displays, signs, sales promotions, the Internet, or in any other public communication in connection with Starbucks goods or services;

        c. From otherwise diluting or infringing upon Plaintiffs' UNICORN LATTE;

        d. From otherwise unfairly competing with Plaintiffs;

    3. Order that Starbucks account and pay over to Plaintiffs all gains, profits, and advantages derived from the conduct alleged herein, pursuant to 15 U.S.C. § 1117 and other applicable law;

    4. Order that Starbucks pay Plaintiffs the damages that Plaintiffs has sustained by reason of the conduct alleged herein;

    5. Order that Starbucks pay Plaintiffs enhanced damages as provided by 15 U.S.C. § 1117 and other applicable law;

    6. Order that Starbucks pay pre-judgment interest on Plaintiffs' damages as provided by 15 U.S.C. §1117 and other applicable law;

    7. Order that Starbucks pay the costs of this action as provided by 15 U.S.C. § 1117 and other applicable law;

    8. Order that Starbucks pay the attorneys' fees as provided by 15 U.S.C. § 1117 and other applicable law; and

9. Order that Starbucks be directed to deliver to the Clerk of this Court for destruction, or show proof of destruction, of any and all products, signs, advertisements, publications, labels, and any and all other materials in their possession, custody, or control that depict or relate to the development, marketing, or sale of the Unicorn Frappuccino, Unicorn Lemonade, or any other of products that infringe on Plaintiffs' mark in accordance with 15 U.S.C. § 1118.

10. Order that Starbucks publish for a period of six (6) months on a website and in print media a statement correcting the confusion as to the unlawful use of the mark and the origination of the UNICORN LATTE.

11. Grant such other and further relief as is just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable of right by a jury which are raised for determination.

Dated:   New York, New York              Respectfully Submitted,
         May 3, 2017

                                         /s/ Joshua I. Schiller

                                         Joshua I. Schiller
                                         Benjamin Margulis
                                         Demetri Blaisdell
                                         Alexander Boies
                                         BOIES SCHILLER FLEXNER LLP
                                         575 Lexington Avenue, 7th Floor
                                         New York, New York 10022
                                         Tel: (212) 446-2300
                                         jischiller@bsfllp.com
                                         bmargulis@bsfllp.com
                                         dblaisdell@bsfllp.com
                                         aboies@bsfllp.com

                                         *Attorneys for Plaintiffs*